# EXHIBIT A

FILED ____ LODGED
RECEIVED ____ COPY

APR 1 7 2000

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ 0  DEPUTY

1 | Gerald Barrett, Esq., #5855
WARD, KEENAN & BARRETT, P.C.
2 | 3030 North Third Street, Suite 930
Phoenix, Arizona 85012-3048
3 | Telephone Number: (602) 279-1717
Facsimile Number: (602) 279-8908

4

5 | and

6 | David Lyle, Esq.
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Drive
7 | Mt. Pleasant, South Carolina 29465
Telephone Number: (843) 216-9122
8 | Fax Number: (843) 216-9450
Attorneys for Plaintiffs

9

## IN THE UNITED STATES DISTRICT COURT

10

## FOR THE DISTRICT OF ARIZONA

11

Johnny Griego, a single man,                          ) (District of Arizona)
12                                                      )
    Plaintiffs,                       ) No. CIV '00 0677 PHX RCB
13                                                      )
vs                                                    ) **COMPLAINT**
14                                                      )
Asbestos Claims Management Corporation,               ) **PLAINTIFFS DEMAND**
15 | f/k/a National Gypsum Company,                   ) **A TRIAL BY JURY**
a Delaware Corporation,                               )
16                                                      ) (ASBESTOS)
A P Green Industries, Inc , formerly known as         )
17 | A P Green Refractories Company,                  )
A Pennsylvania Corporation,                           )
18                                                      )
Amchem Products, Inc ,                                )
19 | a Delaware Corporation,                          )
                                                      )
20 | Armstrong World Industries, Inc, formerly       )
known as Armstrong Cork Company,                     )
21 | A Pennsylvania Corporation,                      )
                                                      )
22 | Certainteed Corporation,                         )
A Delaware Corporation,                               )
23                                                      )
D B Riley, Inc ,                                      )
24 | a Massachusetts Corporation,                     )
                                                      )
25 | Fibreboard Corporaiton,                          )
a Delaware Corporation,                               )
26                                                      )
Flexitallic Gasket Company, Inc ,                     )
27 | a Connecticut Corporation,                       )
                                                      )
28 | The Flintkote Company,                           )
a Massachusetts Corporation,                          )

1  Foster Wheeler Corporation, Successor in
   interest to Forty Eight Insulations, Inc ,
2  a New York Corporation,

3  GAF Corporation,
   a Delaware Corporation,

4
   Georgia Pacific Corporation,
5  a Georgia Corporation,

6  Kaiser Refractories, a division of Kaiser
   Aluminum and Chemical Corporation,
7  a Delaware Corporation,

8  Owens-Corning Fiberlgas Corp ,
   A Delaware Corporation,
9
   Pittsburgh-Corning Corporation,
10 Individually and as Successor to
   Unarco Industries, Inc ,
11 a Pennsylvania Corporation,

12 Quigley Company, Inc ,
   a New York Corporation,
13
   3M Company, a/k/a Minnesota Mining
14 & Manufacturing Company,
   a Delaware Corporation,
15
   Union Carbide Corporation,
16 a New York Corporation,

17 United States Gypsum,
   A Delaware Corporation,
18
   W R Grace & Company,
19 a Connecticut Corporation,

20 _____Defendants_____

21                                 I
22   Plaintiff, **JOHNNY GREIGO,** by counsel, and for his claim against the Defendants

23 states as follows

24     1 Plaintiff, **JOHNNY GRIEGO,** a single man, is a citizen of the State of Arizona,

25 and resident in Maricopa County, Arizona

26     2 Defendants are foreign corporations with principal places of business outside the

27 State of Arizona, and which are incorporated in states other than the State of Arizona No

28 Defendant is a citizen of the State of Arizona As evidenced by the caption of the instant

                                 - 2 -

1 Complaint, which is specifically incorporated herein, the Defendants are foreign corporations

2 who are amenable to jurisdiction in the United States District Court for the District of

3 Arizona by virtue of their respective contacts with the State of Arizona and/or their

4 respective conduct of substantial and/or systematic business in Arizona which subjects them

5 to the jurisdiction of the United States District Court for the District of Arizona pursuant to

6 the Arizona long-arm statute

7     3   The amount in controversy exceeds Seventy Thousand Dollars ($75,000 00),

8 exclusive of interest and costs, and is between citizens of different states

9     4  Jurisdiction is established on the basis of diversity under 28 U S C 1332 (a)

10     5  **JOHNNY GRIEGO,** was for many years employed as a Laborer, having worked

11 at various locations including Arizona While employed as a Laborer in Arizona, **JOHNNY**

12 **GRIEGO,** was exposed to dust from asbestos and asbestos-containing products, which

13 exposure directly and proximately caused him to develop an asbestos-related illness Plaintiff

14 did not discover that he suffered from this asbestos related disease until May of 1998, nor

15 did he have reason to know of his asbestos related disease until May of 1998

16     6  The Defendants (hereinafter referred to as asbestos defendants) mined, processed,

17 manufactured, converted, compounded, and/or retailed and distributed asbestos products in

18 the United States, and more particularly, sold or distributed such products which came to be

19 used at location of Plaintiff's employment, and he was exposed to such products

20     7  (a) Through a series of corporate mergers, Rapid American Corporation expressly

21 assumed all liabilities and debts of Philip Carey Manufacturing Company

22     (b) Philip Carey Manufacturing Company had sufficient contacts with and/or did

23 business in the State of Arizona, such that it and all successor corporations, including Rapid

24 American Corporation, has sufficient contacts and/or transacts business within the State of

25 Arizona to subject them to the jurisdiction of this court

26     (c) The Defendants (hereinafter referred to as asbestos Defendants) mined,

27 processed, manufactured, converted, compounded, and/or retailed and distributed asbestos

28 products in the United States, and more particularly, sold or distributed such products which

- 3 -

1   came to be used at location of Plaintiff's employment, and he was exposed to such products

2         8   The illness and disability of the Plaintiff are a direct and proximate result of the

3   negligence, recklessness and willfulness of the aforementioned Defendants, jointly and

4   severally, in that they produced, sold and otherwise put into, or caused to be put into, the

5   stream of interstate commerce, asbestos and asbestos related materials which the Defendants,

6   and each of them, knew, or in the exercise of ordinary care, should have known were

7   deleterious, poisonous, carcinogenic, and highly harmful to Plaintiff's body, lungs,

8   respiratory system, skin and health

9         9   The illness and disability now suffered by the Plaintiff are the direct and proximate

10   result of the negligence, recklessness and willfulness of the aforementioned Defendants,

11   jointly and severally, in that, even though the aforementioned Defendants knew, or in the

12   exercise of ordinary care should have known, that the asbestos and asbestos related materials

13   were deleterious, poisonous and highly harmful to Plaintiff's body, lungs, respiratory system,

14   skin and health, the aforementioned Defendants nonetheless, negligently and with evil minds,

15         (a)   Failed to advise Plaintiff of the dangerous characteristics of their asbestos and

16               asbestos related products,

17         (b)   Failed or omitted to provide the Plaintiff with the knowledge as to what would

18               be reasonably safe and sufficient wearing apparel and proper protective

19               equipment and appliances, if, in truth, they were in any way able to protect

20               him from being poisoned and disabled as he was by exposure to such

21               deleterious and harmful asbestos related materials,

22         (c)   Failed and omitted to place any warnings or sufficient warnings on their

23               containers of said asbestos and asbestos materials to warn the handlers thereof

24               of the dangers to health in coming in contact with said asbestos and asbestos

25               materials,

26         (d)   Failed and omitted to take reasonable precautions or to exercise reasonable

27               care to publish, adopt and enforce a safety plan and a safe method of handling

28               said asbestos and asbestos materials

- 4 -

1    (e)    Inadequately warned, if, in fact, they warned at all,  persons such as Plaintiff

2           of the dangers to their health in coming in contact with and breathing said

3           asbestos and asbestos related materials, even after they knew of the dangers

4           and cancer-causing effects, and up until the present time,

5    (f)    Did not recommend methods to improve the work environment,

6    (g)    Did not develop alternative products,

7    (h)    Continued to use a known cancer-causing product, to wit  asbestos,

8    (i)    That the defendant, Owens-Illinois, failed to advise purchasers of their

9           product, Kaylo, of the results of experiments in 1948 wherein Kaylo

10          caused asbestosis in animals,

11   (j)    That the defendant, Owens Corning Fiberglas, failed to make

12          inquiry of Owens Illinois or read published literature

13          establishing that Kaylo causes asbestosis in experimental

14          animals and did not communicate that fact to users of such

15          products

16   (k)    The defendants failed to adequately test their asbestos

17          containing products

18

19                                    II

20   The Plaintiffs, for further claims against the Defendants, state as follows

21       10   Plaintiffs reallege and incorporate by reference, as if fully set forth herein,

22   Paragraphs 1 through 9 of this Complaint

23       11   That subsequent to the time the Defendants caused the asbestos products to be

24   sold and placed in buildings and on job sites, the Defendants knew or in the exercise of

25   ordinary care, should have known, that asbestos is deleterious, carcinogenic, and harmful to

26   persons exposed to the material in buildings or on job sites, but nevertheless, the Defendants

27   negligently and recklessly failed and refused to warn and advise the Plaintiff of the

28   dangerous characteristics thereof, and the dangers to the health and welfare of persons

                                    - 5 -

1  coming in contact with and breathing such products even until the present, despite their

2  knowledge of the presence of their products in the buildings or on job sites   That to the

3  present, possessed with information uniquely available them relating to the dangerous effects

4  of continued asbestos exposure, the Defendants have refused to provide that information to

5  the Plaintiff, despite the Defendants' knowledge that their asbestos containing materials

6  would cause injury to Plaintiff

7        12   Plaintiff has furthermore suffered continuing and lingering injury to himself due

8  to the Defendants' asbestos fibers previously inhaled   Said fibers, once inhaled, cause

9  repeated and continuing injury to Plaintiff

10       13    That as proximate result of the aforesaid acts of the Defendants, and the

11  continued presence of asbestos products in buildings and on job sites, the Plaintiff has

12  contracted an asbestos-related illness and suffered damages as herein set forth

13                                         III

14       The Plaintiffs, for their third claims against the Defendants state as follows

15       14    Plaintiffs reallege and incorporate by reference, as if fully set forth herein,

16  Paragraphs 1 through 13 of this Complaint

17       15   At the time the asbestos Defendants, and each of them, sold and/or delivered, or

18  caused to be delivered, the aforesaid asbestos and asbestos related products and at the time

19  said products were used by or near Plaintiff in the manner and environment intended, they

20  were in a defective condition and were unreasonably dangerous and unfit for their intended

21  use in that they were deleterious, poisonous and highly harmful to Plaintiff's body, lungs,

22  respiratory system, skin and health

23       16   Said products directly and proximately caused Plaintiffs' injuries

24                                         IV

25       17   Plaintiff was employed in capacities which placed him in close proximity with

26  asbestos and asbestos-related materials, manufactured and/or distributed by one or more of

27  the Defendants    Plaintiff's presence was known or should have been known to the

28  Defendants and each of them

                                    - 6 -

1    18  Plaintiff was exposed to the asbestos products manufactured by one or more of

2    the Defendants named in paragraph 19 below   The exposure to the asbestos or asbestos-

3    related products manufactured by the Defendant(s) proximately contributed to the asbestos

4    disease suffered by Plaintiff as described below

5    19   Defendant as specifically identified below, individually and as agents of one

6    another and as co-conspirators, agreed and conspired among themselves and with other

7    asbestos manufacturers and distributors to injure the Plaintiff in the following fashion

8    (a) Beginning in approximately 1934, conspirator Johns-Manville Corporation,

9    through its agents, Vandiver Brown and attorney J C  Hobart, and conspirator Raybestos-

10   Manhattan, through its agents, Sumner Simpson and J  Rohrbach, suggested to Dr  Anthony

11   Lanza, Associated Director, Metropolitan Life Insurance Company (insurers of Manville and

12   Raybestos), that Lanza publish a study on asbestosis in which Lanza would affirmatively

13   misrepresent a material fact about asbestos exposure, that is the seriousness of the disease

14   process, asbestosis   This was accomplished through intentional deletion of Lanza's

15   description of asbestosis as "fatal" and through other selective editing that affirmatively

16   misrepresented asbestos as a disease process less serious than it actually is and was known

17   to be then   As a result, Lanza's study was published in the medical literature in this

18   misleading fashion in 1935   The conspirators were motivated, in part, to effectuate this

19   fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence

20   proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits

21   involving Manville, Raybestos and Metropolitan Life, as insurer

22   (b) In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing

23   Company, Gatke Corporation, Johns-Manville Corporation, Keasby & Mattison Company

24   (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell

25   Manufacturing (whose liabilities have been assumed by H K  Porter Company), Union

26   Asbestos and Rubber Company and United States Gypsum Company, entered into an

27   agreement with the Saranac Laboratories  Under this agreement, these conspirators acquired

28   the power to decide what information Saranac Laboratories could publish about asbestos

1   disease and could also control in what form such publications were to occur  This agreement

2   gave these conspirators power to affirmatively misrepresent the results of the work at

3   Saranac, and also gave these conspirators power to suppress material facts included in any

4   study  On numerous occasions thereafter, the conspirators exercised their power to prevent

5   Saranac scientists from disclosing material scientific data, resulting in numerous

6   misstatements of fact being made at scientific meetings

7          (c) On November 11, 1948, representatives of the following conspirators met at the

8   headquarters of Johns-Manville Corporation   American Brake Block Division of American

9   Brake and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (then an alter-

10  ego to conspirator Turner &  Newall), Raybestos-Manhattan, Inc , Thermoid Company

11  (whose assets and liabilities were later purchased by H K  Porter Company), Union Asbestos

12  and Rubber Company and United States Gypsum company  U S  Gypsum did not send a

13  representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to

14  represent its interest at the meeting and to take action on its behalf

15         (d) At this November 11, 1948 meeting, these Defendants and their representatives

16  decided to exert their influence to materially alter and misrepresent material facts about the

17  substance of research started by Dr  Leroy Gardner at the Saranac Laboratories beginning

18  in 1936  Dr  Gardner's research involved the carcinogenicity of asbestos in mice and also

19  included an evaluation of the health effects of asbestos on humans with a critical review of

20  the then-existing standards of dust exposure for asbestos and asbestos products

21         (e) At this meeting, these Defendants intentionally and affirmatively determined that

22  Dr  Gardner's work should be edited to specifically delete material facts about the cancer-

23  causing propensity of asbestos and the health effects of asbestos on humans and the critique

24  of the dust standards and then published same in the medical literature as edited by Dr

25  Vorwald   These Defendants thereby fraudulently misrepresented the risks of asbestos

26  exposure to the public, in general, and the class of persons exposed to asbestos, including

27  the Plaintiff

28         (f) As a direct result of influence exerted by the above-described conspirators, Dr

- 8 -

1   Vorwald published Dr Gardner's edited work in the <u>Journal of Industrial Hygiene, AMA</u>

2   <u>Archives of Industrial Hygiene and Occupational Health</u> in 1951 in a form that stressed those

3   portions of Dr Gardner's work that the conspirators wished stressed, but which omitted

4   references to human asbestosis and cancer, thereby fraudulently and affirmatively

5   misrepresenting the extent of the risks   The conspirators affirmatively and deliberately

6   disseminated this misleading Vorwald publication to university libraries, government offi-

7   cials, agencies and others

8       (g) Such action constituted a material affirmative misrepresentation of the total

9   context of material facts involved in Dr Gardner's work and resulted in creating an

10  appearance that inhalation of asbestos was less of a health problem than Dr Gardner's

11  unedited work indicated

12      (h) The following conspirators were members of the trade association known as

13  Quebec Asbestos Mining Association (Q A M A)   Johns-Manville Corporation, Carey-

14  Canada, individually and as successor to Quebec Asbestos Corporation, the Celotex

15  Corporation, successor to Quebec Asbestos corporation, National Gypsum Company, and

16  Turner & Newall, individually and successor to Bell Asbestos  These conspirators, members

17  of Q A M A, participated in the above-described misrepresentation of the work of Dr Leroy

18  Gardner published by Arthur Vorwald in the <u>AMA Archives of Industrial Health</u> in 1951

19  Evidence of the Q A M A's involvement in this misrepresentation arises from       co-

20  conspirator Johns-Manville's membership of the Q A M A, as well as correspondence from

21  co-conspirators dated 10/29/47, 11/26/47, 3/6/38, 10/15/48, 3/8/49, 3/21/51 and 9/6/50, and

22  all indicating close monitoring of the editing process of Q A M A's representative, Ivan

23  Sabourin, acting on behalf of all Q A M A members

24      (i) Defendants who were members of the Q A M A as described above, began on or

25  about 1950 to formulate a plan to influence public opinion about the relationship between

26  asbestos and cancer by influencing the medical literature on this subject and then touting and

27  disseminating this literature to the public and to organizations and legislative bodies

28  responsible for regulatory control of asbestos with the specific intent of misrepresenting the

1   existing scientific information and suppressing contrary scientific data in their possession and

2   control

3        (j) This plan of misrepresentation and influence over the medical literature began on

4   or about 1950 when the aforementioned Q A M A members selected Saranac Laboratories

5   to do an evaluation of whether cancer was related to asbestos   After a preliminary report

6   authored by Arthur Vorwald in 1952 indicated that a cancer/asbestos relationship might exist

7   in experimental animals, these Q A M A members refused to further fund the study and it

8   was terminated and never publicly discussed

9        (k) As a result of the termination of this study, these Defendants fraudulently withheld

10   information from the public and affirmatively misrepresented to the public and responsible

11   legislative and regulatory bodies that asbestos did not cause cancer, including affirmative

12   misrepresentations by conspirators' agents K W Smith, M D , Paul Cartier, M D , A J

13   Vorwald, M D , A J Lanza, M D , Vandiver Brown and Ivan Sabourin, said

14   misrepresentations being directed to inter alia, U S Government officials, Canadian

15   government officials, U S National Cancer Institute, other medical organizations and the

16   general public, including Plaintiff

17        (l) Subsequently, the Q A M A Defendant conspirators contracted with the Industrial

18   Hygiene Foundation and Dr Daniel Braun to further study the relationship between asbestos

19   exposure, asbestosis and lung cancer   In 1957, Drs Braun and Truan reported to the

20   Q A M A that asbestosis did increase a worker's chances of incurring lung cancer

21        (m) The Q A M A Defendant conspirators/members thereafter caused, in 1958, a

22   publication of the work by Braun and Truan in which the findings regarding increased

23   incidence of cancer in persons with asbestosis was edited out by agents of the Q A M A  The

24   published version of this study contained a conclusion that asbestos exposure, alone,  did not

25   increase the incidence of lung cancer, a conclusion known by the Defendant conspirators to

26   be patently false

27        (n) By falsifying and causing publication of studies concluding that asbestos exposure

28   did not cause lung cancer and simultaneously omitting a document finding that asbestosis did

1   increase the risk of lung cancer, these Q A M A Defendant conspirators affirmatively

2   misrepresented to the public and concealed from the public the extent of risks associated with

3   inhalation of asbestos fibers

4   (o) In approximately 1958, these Q A M A Defendant conspirators publicized the

5   edited works of Drs Braun and Truan at a symposium in an effort to fraudulently

6   misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos

7   dust would not cause cancer

8   (p) The fraudulent misrepresentations beginning in 1946 as elaborated above and

9   continuing with the publication of the 1958 Braun/Truan study influenced the standards set

10  for threshold limit values for development of such standards to fail to lower the threshold

11  limit value because of a cancer risk associated with asbestos inhalation

12  (q) In 1967, Q A M A conspirators determined at their trade association meeting that

13  they would intentionally mislead consumers about the extent of risks involved in inhalation

14  of asbestos products

15  (r) In 1952, a Symposium regarding the health effects of asbestos was held at the

16  Saranac Laboratories  The following conspirators were in attendance  Johns-Manville,

17  Turner & Newall, Raybestos-Manhattan, and Q A M A  members by way of their agents,

18  Cartier, Sabourin and LaChance

19  (s) At this meeting, the occurrence of lung cancer and asbestosis in product users was

20  discussed and the carcinogenic properties of all fiber types of asbestos was also discussed

21  In an affirmative attempt to mislead the public about the extent of health risks associated

22  with asbestos, and in an effort to fraudulently conceal those risks from the public, these

23  Defendants conspired to prevent publication of the record of this 1952 Saranac Symposium

24  and it was not published  In addition, the conspirators induced Vorwald not to announce the

25  results of his and Gardner's animal studies showing excess cancers in animals which thereby

26  fraudulently misrepresented existing secret data which could not be publicized owing to the

27  secrecy provisions contained in the 1936 Saranac agreement heretofore described

28  (t) The following conspirators were members of the

- 11 -

1    Magnesia Insulation Manufacturers Association   Philip-Carey Corporation (predecessor to
2    Celotex) and Johns-Manville

3         (u) In 1955, these conspirators caused to be published the MIMA 85% Magnesia
4    Insulation Manual   This manual falsely and fraudulently misrepresented that asbestos-
5    containing products offered no hazard to workers who used these products

6         (v) The following conspirators were members of the trade organization known as the
7    Asbestos Textile Institute (ATI)   Raybestos-Manhattan, Johns-Manville, H K Porter,
8    Keasby & Mattison, individually and through its alter-ego Turner & Newall and National
9    Gypsum

10        (w) In 1947, these conspirator, members of the ATI, received a report from W C L
11   Hemeon regarding asbestosis, which suggested re-evaluation of the then-existing threshold
12   limit values for asbestos exposure   These Defendants caused this report not to be published
13   and thereby fraudulently concealed material facts about asbestos exposure from the public
14   and affirmatively misrepresented to the public and class of persons exposed to asbestos that
15   the existing threshold limit value was acceptable   Thereafter, these Defendant conspirators
16   withheld additional material information on the dust standards from The American
17   Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing
18   evaluations of threshold limit values for asbestos exposure

19        (x) In 1953, conspirator National Gypsum, through its agents, in response to an
20   inquiry from the Arizona Division of Industrial Hygiene regarding health hazards of asbestos
21   spray products, refused to mail a proposed response to that division indicating that respirators
22   should be worn by applicators of the products   National Gypsum's response distorted and
23   fraudulently misrepresented the need for applicators of asbestos spray products to wear
24   respirators and fraudulently concealed from such applicators the need for respirators

25        (y) In 1955, conspirator Johns-Manville, through its agent Kenneth Smith, caused to
26   be published in the AMA Archives of Industrial Health, an article entitled "Pulmonary
27   Disability in Asbestos Workers "  This published study materially altered the results of an
28   earlier study in 1949 concerning the same set of workers   This alteration of Dr  Smith's study

- 12 -

1  constituted a fraudulent and material misrepresentation about the extent of the risk associated

2  with asbestos inhalation

3       (z) In 1955, the National Cancer Institute held a meeting at which conspirator Johns-

4  Manville, individually and as an agent for other alleged co-conspirators and A  Vorwald, as

5  agent of co-conspirators, affirmatively misrepresented that there were no existing animal

6  studies concerning the relationship between asbestos exposure and cancer, when, in fact, the

7  conspirators were in secret possession of several studies which demonstrated that positive

8  evidence did exist

9       (aa) In 1957, these conspirators, members of the ATI, jointly rejected a proposed

10  research study on cancer and asbestos and this resulted in fraudulently concealing from the

11  public, material facts regarding asbestos exposure and also constituted an affirmative

12  misrepresentation of the then existing knowledge about asbestos exposure and lung cancer

13       (bb) In 1964, conspirators who were members of the ATI met to formulate a plan for

14  rebutting the association between lung cancer and asbestos exposure that had been recently

15  discussed by Dr Irving J Selikoff  Thereafter, these members of the ATI embarked upon

16  a campaign to further misrepresent the association between asbestos exposure and lung

17  cancer

18       (cc) In 1970, through their agents, Defendants, the Celotex Corporation and Carey-

19  Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and

20  found no reported conditions of asbestosis or lung disease  This constituted a fraudulent

21  misrepresentation about the material facts known to these Defendants

22       (dd) All conspirators identified above approved and ratified and furthered the previous

23  conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan and A  J  Lanza,

24  acting on behalf of Metropolitan Life Insurance Company, and all alleged co-conspirators

25  during the dates and circumstances alleged above, acted as agents and co-conspirator for the

26  other conspirators

27       20  The acts of the Defendant conspirators as described above, constitute a fraudulent

28  concealment and/or a fraudulent misrepresentation which proximately caused injury to the

- 13 -

1  Plaintiff in the following manner

2      (a) The material published or caused to be published by the Defendants was false and

3  incomplete in that the Defendants knowingly and deliberately deleted references to the

4  known health hazards of asbestos and asbestos-related products

5      (b) Defendants individually, as members of a conspiracy, and as agents of other co-

6  conspirators, intended that the publication of false and misleading reports and/or the

7  nondisclosure of documented reports of the health hazards of asbestos

8      (1) maintain a favorable atmosphere for the continued  sale and distribution

9  of asbestos and asbestos-related products,

10      (2) assist in the continued pecuniary gain of the Defendants through the

11  sale of their products,

12      (3) influence in the Defendants' favor proposed  legislation to regulate asbestos

13  exposure and,

14      (4) to provide a defense in law suits brought for injury resulting from asbestos

15  disease

16      (c) Plaintiff reasonably relied upon the published medical and scientific data

17  documenting the purported safety of asbestos and asbestos-related products, and the absence

18  of published medical and scientific reports on the hazards of asbestos and asbestos-related

19  products to continue his exposure to asbestos because he believed it to be safe

20      (d) Defendants individually, as members of a conspiracy, and as agents of other co-

21  conspirators intended that Plaintiff rely upon the published reports regarding the safety of

22  asbestos and asbestos-related products and upon the absence of published medical and

23  scientific data regarding the hazards of asbestos and asbestos-related products, to continue

24  his exposure to those products

25      (e) Defendants individually, as members of a conspiracy and as agents of other co-

26  conspirators are in a position of superior knowledge regarding the health hazards of asbestos

27  and therefore Plaintiff had a right to rely on the published reports commissioned by the

28  Defendants regarding the health hazards of asbestos and the absence of published medical

- 14 -

1   and scientific data regarding the hazards of asbestos and asbestos-related products

2     (f) As a direct and proximate result of the acts alleged herein, Plaintiff was exposed

3   to asbestos without knowledge of its hazardous nature and developed an asbestos related

4   disease due to this exposure

5   V

6     The plaintiffs for their fifth claim against the Defendants state as follows

7     21   Plaintiffs reallege and incorporate by reference, as if fully set forth herein,

8   Paragraphs 1 through 20 of this Complaint

9     22   That the aforementioned asbestos Defendants, and each of them, therefore,

10   impliedly and expressly warranted their products   However, the warranties were breached

11     23   As a result of the breach and the acts and/or omissions of the Defendants, and

12   each of them, as aforesaid, the breach was the direct and proximate cause of the severe

13   damages to Plaintiffs as herein set forth

14     24   As a result of the development of an asbestos-related illness, Plaintiff has

15   sustained very serious injuries to his person requiring medical treatment

16     25   Plaintiffs have further suffered great pain, extreme nervousness and mental

17   anguish as a direct result of the aforesaid injuries

18     26   Plaintiff believes that his injuries and illnesses are permanent in nature and that

19   he will be forced to suffer same for the remainder of his life, that his enjoyment of life has

20   been greatly impaired and, further, that his expected life span has been greatly shoretned

21     27   Plaintiff alleges that as a result of the aforesaid illnesses, he has been forced to

22   incur large amounts of medical expenses by way of doctor and drug bills and believes that

23   he will be forced to incur additional expenses in an effort to treat his illnesses

24     WHEREFORE, Plaintiff, **JOHNNY GRIEGO**, demands judgment against the

25   Defendants, jointly and separately, for compensatory damages in an amount greater than the

26   jurisdictional amount, and which is reasonable, the exact amount to be determined by the

27   trier of fact at trial, for punitive damages in an amount to be determined at trial, and which

28   is reasonable, and for all other just and proper relief in the premises

- 15 -

## JURY DEMAND

Plaintiff demands a trial by Jury as provided for in the Federal Rules of Civil Procedure

DATED this _12_ day of April, 2000.

NESS, MOTLEY, LOADHOLT, RICHARDSON
& POOLE
By:  David Lyle, Esq.
     Ness, Motley, Loadholt, Richardson & Poole
     28 Bridgeside Drive
     Mt. Pleasant, South Carolina 29465
     Telephone Number: (843) 216-9122
     Fax Number: (843) 216-9450
     Attorneys for Plaintiffs

WARD, KEENAN & BARRETT

By:
     Gerald Barrett, Esq.
     3030 North Third Street, Suite 930
     Phoenix, Arizona  85012-3048
     Attorneys for Plaintiffs

- 16 -